# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2782
_____

United States of America,

*Plaintiff - Appellee,*

v.

Robert Gafford,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau
_____

Submitted: June 10, 2025
Filed: August 13, 2025
_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

COLLOTON, Chief Judge.

Robert Gafford was convicted of delay and embezzlement of mail. *See* 18 U.S.C. §§ 1703(a), 1709. The district court[*] sentenced Gafford to fourteen months' imprisonment on each count to run concurrently. On appeal, Gafford challenges the

_____

[*]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

sufficiency of the evidence on each conviction, the admission of certain testimony at trial, and the term of imprisonment. We affirm.

## I.

Robert Gafford was hired by the United States Postal Service as a rural mail carrier in 2015. He was assigned to deliver mail in Scott County, Missouri, along a rural route that included the home of Karen and Doug Ressel.

In the summer of 2021, the Ressels noticed that anticipated mail did not arrive at their mailbox. They initially thought the failed deliveries were caused by construction on the county road where they lived. But after the road construction was completed in November, the problem of missing mail continued.

The Ressels inquired with the postmaster and with a customer service supervisor, Dustin Redden, about why they were not receiving their mail. Redden met with Gafford to discuss the undelivered mail. Gafford said that he believed it was unsafe to deliver mail to the Ressels' mailbox. Redden explained to Gafford that the Ressels' mailbox was an established delivery location and gave Gafford "direct orders to deliver the mail."

The problem of undelivered mail continued. Beginning in November, Redden met with Gafford weekly and directed him to deliver to the Ressels' mailbox. By late February 2022, the weekly meetings turned into daily meetings. Gafford continued to assert that the mailbox was in an unsafe location and that he could not deliver to the mailbox. So Redden personally inspected the Ressels' mailbox and determined that delivery was safe. Redden also contacted Gafford's union representative to examine the location of the mailbox; the union representative likewise concluded that delivery was safe.

The Ressels undertook two measures to determine what was happening to their mail. In March, Karen signed up for a free service offered by the United States Postal Service called "Informed Delivery." The service sent e-mails to Karen notifying her about what items were scheduled for delivery that day. Karen forwarded the e-mails to Redden.

In early April, Karen used an Apple AirTag to track pieces of test mail. The Apple AirTag is a global positioning system tracking device that allows a user to track on her phone where the AirTag is located. Karen conducted a "test run" by placing the AirTag inside an envelope and mailing it to her brother-in-law's residence. The envelope was delivered; on her phone, Karen could see that the AirTag was located at her brother-in-law's home.

After retrieving the AirTag, Karen placed the device in an envelope addressed to her own residence and mailed it. She informed Redden about the plan, and he confirmed that the post office received her test mail. Karen tracked the test mail to an unknown address. Redden then determined that the address was Gafford's residence.

Special Agent Becker of the Postal Service began investigating Gafford's conduct in March 2022. Becker had been informed of Karen's test using the Apple AirTag. He sent a "test piece" of mail addressed to the Ressel residence with a transmitter device that Becker could use to locate the item with a receiver.

On April 12, Agent Becker coordinated with the postmaster to place the envelope with the transmitter device into Gafford's mail tray for delivery. The tray included two other pieces of mail for delivery to the Ressels. Karen received an e-mail notification through Informed Delivery that she was scheduled to receive three pieces of mail.

That morning, Agent Becker observed Gafford drive a mail delivery truck around the post office's parking lot and stop near Gafford's personal vehicle. Becker saw Gafford exit the mail truck and stand next to his personal vehicle for over a minute. Gafford then reentered the mail truck and left on his delivery route. Becker and two other agents followed Gafford throughout the day in unmarked vehicles. The postmaster notified Becker that the Ressels did not receive their mail. Becker checked the Ressels' mailbox and did not find any mail inside.

Agent Becker returned to the post office, and the transmitter emitted a signal. Post office staff searched the post office and could not locate the mail. Another agent took the receiver and stood next to Gafford's vehicle. The agent received a strong signal from the transmitter.

After Gafford finished his route, he returned to the post office and entered his personal vehicle. Gafford drove away, and the agents followed. The agents continued to receive a signal from the transmitter. The agents then conducted an investigatory stop and discovered in Gafford's glove compartment the envelope with the transmitter and the two other pieces of mail that were addressed to the Ressels.

A grand jury charged Gafford with delay of mail, *see* 18 U.S.C. § 1703(a), and embezzlement of mail, *see id.* § 1709. At trial, the jury found Gafford guilty on both counts. The court sentenced Gafford to fourteen months' imprisonment on each count, to run concurrently.

## II.

On appeal, Gafford argues that there was insufficient evidence to support the convictions. We review the denial of a motion for judgment of acquittal *de novo*, viewing the record in the light most favorable to the jury's verdict and accepting all reasonable inferences in support of the verdict. *United States v. Broeker*, 27 F.4th

-4-

1331, 1335 (8th Cir. 2022). The question is whether any reasonable jury could have found Gafford guilty beyond a reasonable doubt. *United States v. Outlaw*, 946 F.3d 1015, 1017 (8th Cir. 2020); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Gafford first argues that the evidence was insufficient to support the conviction for embezzlement of mail under 18 U.S.C. § 1709. The jury was instructed that embezzlement of mail required the government to prove that Gafford (1) was a postal employee, (2) had possession of mail that was intended to be conveyed by mail, and (3) took or removed the mail with the intent to convert it to his own use.

Gafford argues that there was insufficient evidence to prove that he intended to convert the Ressels' mail for his own use or that the items were of such value that a jury reasonably could infer that the mail would be converted for his own use. But there was circumstantial evidence that Gafford had taken mail over a period of several months, and that some of the mail contained valuable items. Evidence was also presented that Redden repeatedly ordered Gafford to deliver the Ressels' mail, but that Gafford refused. Although Gafford claimed that he refused to deliver mail to the Ressels because their mailbox was in an unsafe location, Gafford repeatedly failed to return the undelivered mail to the post office. A jury reasonably could infer that when Gafford removed the mail, placed it in his personal vehicle, and drove away from the post office on April 12, Gafford intended to convert the Ressels' mail for his own use. The evidence was sufficient to support the jury's finding.

Gafford also argues that there was insufficient evidence to support the conviction for delay of mail under § 1703(a). That offense requires proof that Gafford (1) was a postal employee, (2) had possession of mail that was intended to be conveyed by mail, (3) and unlawfully secreted, destroyed, detained, delayed, or opened the mail. Gafford argues that there was insufficient evidence to prove that he acted unlawfully. He claims that there was no evidence showing that the mail found in his possession "was valuable or could be converted to [his] use." But the

-5-

government was not required under § 1703(a) to prove that the mail contained anything of value or could be converted by Gafford. The statute requires only proof that Gafford unlawfully detained the mail. Because there was sufficient evidence to prove that Gafford intended to convert the Ressels' mail to his own use, the evidence likewise supported the jury's finding that Gafford unlawfully detained the mail.

Gafford next challenges the admission of Karen's testimony at trial regarding the Apple AirTag device. He contends that the government did not lay a proper foundation for Karen to testify about how the AirTag works because she was not familiar with the internal operations of the device. *See* Fed. R. Evid. 901(b)(9). We review the district court's evidentiary rulings for abuse of discretion. *United States v. Brooks*, 715 F.3d 1069, 1077 (8th Cir. 2013).

The district court did not abuse its discretion in admitting this testimony. Karen testified that she had used the AirTag in the past to locate her children and had found it to be reliable. She also testified that she conducted a "test-run" with the device by placing it in an envelope and sending it to her brother-in-law's residence. She explained that the test was successful because she could see on her phone that the AirTag was located at her relative's residence. She then addressed an envelope containing the AirTag to her own residence and tracked the device to Gafford's residence. Karen's testimony established sufficient foundation to demonstrate the accuracy of the GPS tracking device. *See id*. at 1078-79. The district court properly determined that there was adequate foundation.

Gafford raises two challenges to his term of imprisonment. He argues that his "rights to be free from cruel and unusual punishment and double jeopardy were violated when he was sentenced to fourteen (14) months on both Counts I and II." These claims are moot because Gafford has been released from prison. *See Owen v. United States*, 930 F.3d 989, 990 (8th Cir. 2019).

-6-

The judgment of the district court is affirmed.

_____